UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **Iyanna Howard**<br>17403 Carroll Bridge Rd<br>Windsor, Va 23487<br><br>v.<br><br>**Glasser & Glasser, P.L.C.**<br>580 E Main St. Ste 600<br>Norfolk, VA 23510<br><br>*Serve Registered Agent*<br>**Jacob Glasser**<br>580 E Main St. Ste 600<br>Norfolk, VA 23510<br><br>**Michael Glasser**<br>c/o Glasser & Glasser, P.L.C.<br>580 E Main St. Ste 600<br>Norfolk, VA 23510<br><br>**Jacob Glasser**<br>c/o Glasser & Glasser, P.L.C.<br>580 E Main St. Ste 600<br>Norfolk, VA 23510<br><br>**Mark Groves**<br>c/o Glasser & Glasser, P.L.C.<br>580 E Main St. Ste 600<br>Norfolk, VA 23510 | Case No. : |

## **COMPLAINT**

COMES NOW Plaintiff, Iyanna Howard ("Ms. Howard" or "Plaintiff"), by and through undersigned counsel, Lucrecia P. Johnson, Esq. and LPJ Legal, PLLC, and hereby moves this Honorable Court for judgement in this civil action against Glasser & Glasser, P.L.C ("Glasser" or "Glasser and Glasser") and Mark Groves, Jacob Glasser and Michael Glasser, herein (collectively

1

"Defendants"). Plaintiff states, upon knowledge of her own individual action, or otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff, Iyanna Howard, brings this action against the Defendants for discrimination and retaliatory actions in violation of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e) and other applicable State law.

2. Glasser & Glasser hired Iyanna Howard in April 2024 as an Attorney. During Ms. Howard's tenure at Glasser and Glasser, she provided excellent work, took on a leadership role, and went above and beyond the scope of her job descriptions. Despite Ms. Howard's achievements, Defendants discriminated against her because of her race and color and retaliated against her. In February 2025, after providing exemplary service to Glasser and Glasser, Defendants summarily fired Ms. Howard, but not before subjecting her to four months of verbal humiliation and a hostile work environment that caused Ms. Howard to have severe mental distress.

3. Ms. Howard files this action and seeks redress for the Defendants' unlawful actions.

## PARTIES

4. Plaintiff, Iyanna Howard, is an individual residing in the Commonwealth of Virginia. Iyanna Howard is an employee, as defined by Title VII, Va. Code Ann. § 2.2-3905. Iyanna Howard worked for Glasser & Glasser, P.L.C., as an Attorney in Norfolk, Virginia, from approximately April 15, 2024, through approximately February 7, 2025.

5. Upon information and belief, Defendant, Glasser & Glasser, P.L.C., is a Limited Liability Company registered in the State of Virginia, with its principal office located at 580 E Main St. Ste 600, Norfolk, Virginia, 23510.

6. Upon information and belief, Defendant Mark Groves is an individual residing in the Commonwealth of Virginia and a Member and Managing Attorney of Glasser & Glasser, P.L.C.

7. Upon information and belief, Defendant Jacob Glasser is an individual residing in the Commonwealth of Virginia and a Member and Managing Attorney of Glasser & Glasser, P.L.C.

8. Upon information and belief, Defendant Michael Glasser is an individual residing in the Commonwealth of Virginia and a Member and Managing Attorney of Glasser & Glasser, P.L.C

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. This court has supplemental jurisdiction over the Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper pursuant to 28 U.S.C. § 1391, in that the Defendants are subject to personal jurisdiction in the Eastern District of Virginia, they regularly conduct business activities within the Eastern District of Virginia, and the events giving rise to the claims occurred in the Eastern District of Virginia.

11. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in Virginia.

## STATEMENT OF FACTS

12. Plaintiff, Iyanna Howard, began working for Glasser and Glasser on April 15, 2024, as an Attorney. *See Exhibit A*.

13. At all relevant times, Ms. Howard was the only Black/African American attorney, and the only Black/African American female attorney employed at the Defendants' Virginia office location.

14. Prior to accepting the job offer with Glasser, Ms. Howard submitted a laboratory drug test. She did so solely for the purpose of determining her eligibility for employment with the Firm.

15. On April 2, 2024, Ms. Howard and the Defendants executed an employment agreement. Ms. Howard was also provided with a copy of the Glasser & Glasser, P.L.C. Employee Handbook, dated January 1, 2024.

16. Neither the employment agreement nor the handbook stated that employees' personal information would be shared with the Firm's clients or other external parties.

17. Specifically, Section 20 of the executed employment agreement states:

"Employee consents to Employer conducting background checks, credit checks, and drug screens of Employee prior to Employer's execution of this agreement and at various times throughout Employee's employment as deemed necessary by Employer." *See Exhibit B*.

18. The Drug Screening section of the Employee Handbook indicated that drug test results are used solely "to determine employment eligibility."

19. The Handbook further explains that "[i]f a positive result is returned, then a valid prescription will be requested from the candidate. All results will be reviewed by the Director of Human Resources, the Chief Compliance Officer, and the Firm partnership." *See Exhibit C*.

20. There is no language in the Employee Handbook, including the Drug Screening section, that states, references, or suggests that drug test results or prescription information will be disclosed to third parties. Likewise, the employment agreement does not contain any provision that references or suggests that drug test results or prescription information will be shared with external parties.

21. During her tenure at Glasser and Glasser, Ms. Howard consistently received exceptional performance evaluations.

22. She was also informed that she would be promoted to the position of Senior Associate and Director of Employee Relations.

23. Mark Groves, a managing attorney in the firm, expressed admiration for Ms. Howard's interpersonal skills and her background in Human Resources and Criminal Law. He asked whether she would be interested in replacing the previous Employee Relations Director.

24. Mr. Groves and Ms. Howard met in person to discuss her potential transition into dual roles as a Collections Attorney and Employee Relations Director. During the meeting, they discussed responsibilities, title change, compensation, budgeting, staff events, and attorney meetings.

25. They also discussed combining her current salary with that of the former Director, totaling approximately $170,000 annually. This amount would include retroactive compensation for work Mr. Groves requested Ms. Howard to perform pro bono, as well as out-of-pocket costs she incurred purchasing staff items, snacks, and branded materials.

### Glasser's Disclosure of Plaintiff's Confidential Information

26. On October 2, 2024, at approximately 8:45 a.m., Mark Groves approached Ms. Howard was in the Crowne Plaza Parking Garage as she retrieved items from her vehicle.

27. During this exchange, Mr. Groves disclosed that during a Discover Bank client audit meeting on October 1, 2024, Ms. Howard's background check, credit report, drug test results, and prescription information were displayed on a television monitor screen.

28. This information included her full name and position as a licensed attorney in Virginia and North Carolina and was visible to all meeting participants, including representatives of Discover Bank.

### Disparaging Remarks and Discriminatory Behavior Toward Ms. Howard

29. During the October 1, 2024, audit, Mark Groves remarked out loud, "What kind of people are we hiring here?!" when Ms. Howard's information was on the screen.

30. Upon information and belief, this comment was only made about Ms. Howard and none of the other Non-Black employees.

31. Multiple people confirmed that the remark was made in front of numerous people, including clients and other employees.

32. The leadership team at Glasser laughed off the matter as an "unfortunate joke."

### Plaintiff Reports the Disparaging Remarks and Breach of Confidentiality

33. Following the Encounter with Mr. Groves, Ms. Howard immediately reported the incident to her supervisor, Dan Bengston, and inquired about what information is typically discussed and shared during client audits.

34. Mr. Bengston was visibly shocked by what Mr. Groves said and stated that he would never have allowed such information to be disclosed.

35. Mr. Bengston advised Ms. Howard to contact Bobbi Jo Scott and Andrea Kiff to find out what information was shared and why.

36. Ms. Howard contacted Ms. Scott and Ms. Kiff on October 2, 2024. *See Exhibit D.*

37. Between October 3 and October 4, 2024, Mr. Groves, Ms. Andrea Kiff, and Ms. Bobbi Jo Scott admitted to Ms. Howard that her unredacted confidential information had been displayed during the Discover Bank audit.

38. Glasser never informed Ms. Howard, either verbally or in writing, that her personal, confidential medical and prescription information would be shared with clients during audits. The disclosure of this information exceeds the scope of both the employment agreement and the employee handbook.

**Subsequent Discriminatory and Retaliatory Actions by Glasser and its Employees**

39. As a result of Ms. Howard's complaint, Defendants subjected her to unlawful retaliation.

40. From October 21, 2024, until approximately February 2, 2025, employees told Ms. Howard that she should "watch her back" and start "looking for other jobs" because Glasser was going to try to find a reason to fire her or make it unbearable so that she would end up just quitting.

41. Ms. Howard would receive daily "quarantined email messages" from Glasser, and eventually, her email messages were blocked by Glasser.

42. Further, on October 18, 2024, Glasser caused Ms. Howard to click on a "phishing email" and subsequently indicated Ms. Howard was in violation of the Firm's policy from this action.

43. Glasser required Ms. Howard to send "read receipts" to IT regarding all security and "phishing" emails.

44. Upon information and belief, no other employee was subjected to such requirements. Especially not the white employees.

45. On October 9, 2024, Laura Kitchell, the Firm's Audit Manager, emailed Ms. Howard and indicated that Ms. Howard was in violation of Glasser's data uploading policy.

46. On November 20, 2024, and November 21, 2024, Andrea Kiff emailed Ms. Howard, indicating Ms. Howard was in violation of the Defendants' client call policy.

47. Glasser did not promote Ms. Howard to the Senior Associate/Director of Employee Relations role as promised by Mark Groves on or about August 8, 2024.

48. Glasser gave reputational and compensatory credit as well as professional advancement opportunities to another (non-black) employee for all of the work that Ms. Howard had specifically and successfully completed tasks that resulted in the department making or exceeding internal benchmark goals between April 15, 2024, to September 30, 2024.

49. Ms. Howard did not receive the correct compensation per pay increase post-90-day evaluation as promised.

50. Starting October 1, 2024, Defendants began advertising for a VA/NC attorney. This is Ms. Howard's position in the firm. Ms. Howard is licensed in VA/NC and does work for Defendants in both states.

51. On December 19, 2024, at the department floor meeting, Ms. Howard witnessed Michael and Jacob Glasser watching, glaring, and intimidatingly staring down Ms. Howard as she was walking towards them to find a place to stand/sit for the meeting. Ms. Howard ended up physically backing away from them, Ms. Howard had a panic attack after this incident

52. On December 20, 2024, Mr. Groves commented Ms. Howard indicating that the checks from her clients would bounce. Upon information and belief, this comment was made because of Ms. Howard's race.

53. Ms. Howard's access to firm systems, including her email, phone, and garage, was restricted.

54. All the actions described above only occurred to Ms. Glasser, and none of the non-black employees.

### Impact of Defendants' Actions on Plaintiff's Health and Employment

55. Since October 2, 2024, Ms. Howard experienced severe daily panic attacks, which required her to physically leave the workplace and/or increase her remote work arrangements as a direct result of Defendants' actions.

56. Defendants' combined actions have significantly disrupted Ms. Howard's ability to perform her job, leaving her in constant fear of termination, causing heightened anxiety, distraction, distress, and an inability to complete work assignments.

57. The severity of Ms. Howard's condition has been witnessed by multiple staff and employees of Glasser, who have observed her suffering from intense panic attacks, crying spells, increased anxiety, depression, social isolation within her office, mood swings, fatigue, shame, fear, sadness, and anger.

58. Additionally, since October 2, 2024, Ms. Howard's mother, husband, friends, doctors, and spiritual advisors have all observed her experiencing these symptoms, including severe panic attacks, crying, increased anxiety and depression, insomnia, isolation, mood swings, sadness, fear, and anger.

59. As a result, Ms. Howard has increased her appointments with both her therapist and spiritual advisors.

**Plaintiff Separation from Employment with Glasser and Glasser's Withholding of Pay**

60. At the direction of Mr. Groves, Ms. Howard signed a voluntary resignation/termination agreement on February 3, 2025, resulting in her resignation from her position at Glasser.

61. According to this agreement, Ms. Howard's last day of employment was set as February 24, 2025. *See Exhibit E.*

62. However, on February 7, 2025, Defendants terminated Ms. Howard's employment at Glasser and failed to provide her with full payment, including compensation for mileage, tolls, and other reimbursable costs.

63. Despite Ms. Howard's attempts to contact Defendants to address outstanding pay and to forward court documents she was still receiving, Defendants blocked Ms. Howard's email and phone number, making further communication impossible.

**CONDITIONS PRECEDENT**

64. On April 9, 2025, Iyanna Howard timely filed charges of racial and disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), Charge No: 437-2025-00743.

65. On or about August 13, 2025, the EEOC issued Iyanna Howard a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Iyanna Howard has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

66. Contemporaneously with the filing of this Complaint, Iyanna Howard has mailed a copy to the EEOC, Norfolk Local Office, thereby satisfying the notice requirements of 42 U.S.C.S. § 2000e-5.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against Glasser and Glasser)

67. Plaintiff repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

68. Plaintiff and Defendant entered into an Agreement pursuant to the terms stated above and attached hereto as *Exhibit B*.

69. Plaintiff performed her obligations under the Agreement. Defendant did not. Defendant did not pay Plaintiff all of the compensation Plaintiff was entitled to pursuant to the terms of the Agreement.

70. As a result of Defendant's breach of the Agreement, Plaintiff has been deprived of her rights under the Agreement, including Plaintiff's right to compensation and other reimbursable costs.

71. Defendant's breach of contract has damaged Plaintiff in an amount to be determined at trial, plus continuing interest accruing from the date of the breach through the date that Defendant's obligation is satisfied in full, plus reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against Glasser and Glasser)

72. Plaintiff repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

73. Defendant's conduct as alleged above constitutes a breach of the covenants of good faith and fair dealing implied but not expressly written in every contract. This covenant also requires that neither party to a contract will do anything that injures the right of the other to receive the benefits of the contract.

74. As part of the covenants of good faith and fair dealing, it is implied that Defendant entered into the Agreement with the intent to abide by the promises set forth therein.

75. As part of the covenants of good faith and fair dealing, it is implied that Defendant would not terminate Plaintiff's employment to avoid the promises set forth therein.

76. As part of the covenants of good faith and fair dealing, it is implied that Defendant would not cause Plaintiff to work in a hostile or discriminatory environment.

77. As set forth above, Defendant breached the implied covenants of good faith and fair dealing.

78. Defendant's wrongful actions serve as a willful and intentional deception and misrepresentation not expressed by, reserved in, or otherwise contemplated by the written terms and conditions of the Agreement.

79. As a direct and proximate result of the Defendant's breach of the implied covenants of good faith and fair dealing, Plaintiff has been damaged in an amount to be determined at trial, together with costs, interest, and attorneys' fees.

## THIRD CAUSE OF ACTION
## RACE AND COLOR DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C. §§ 2000E ET AL.)
## (Against all Defendants)

80. Plaintiffs repeat and reallege the preceding paragraphs, as if fully set forth herein.

81. Plaintiff was qualified for her position when Glasser and Glasser fired her.

82. Defendants regularly made discriminatory comments to Plaintiff because of her race and color. For example, commenting about the "type of people" Glasser was hiring when referring to Plaintiff, and stating that the checks from the clients brought in by Plaintiff will bounce.

83. In addition, Defendants marginalized Plaintiff while treating similarly situated employees more favorably.

84. Specifically, Ms. Howard was subjected to multiple adverse employment actions, including but not limited to: Being denied a promised promotion to Senior Associate/Director of Employee Relations; Being denied correct compensation and professional credit for her successful work; Subjected to a hostile work environment involving continuous intimidation, threats of termination, and racial hostility; The imposition of punitive and discriminatory policies, and; Termination of employment on February 7, 2025.

85. Ms. Howard was treated differently and more harshly than similarly situated employees outside of her protected class.

86. Plaintiff suffered damages because of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

87. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(42 U.S.C. §§ 2000E ET AL.)
(Against all Defendants)

88. Plaintiffs repeat and reallege the preceding paragraphs, as if fully set forth herein.

89. Prior to Defendants' campaign of retaliation, Defendant Groves stated that Plaintiff was performing her job duties in a satisfactory manner and offered her a promotion.

90. On October 2, 2024, Plaintiff engaged in protected activity by complaining to her supervisor, Dan Bengston, and then later, Human Resources, about Mr. Groves's discriminatory treatment based on Plaintiff's race and color. Dan Bengston was visibly shocked by Mr. Groves's remarks.

91. A few days after the complaint, Defendants engaged in disparaging and further discriminatory actions as described above.

92. Only 4 months after Plaintiff complained of race and color discrimination, Defendants summarily fired Plaintiff on February 7, 2025.

93. Defendant fired Plaintiff for reasons that are pretextual and baseless. Plaintiff was fired because she complained of discrimination.

94. Plaintiff suffered damages because of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

13

95. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## FIFTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (Against all Defendants)

96. Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

97. Ms. Howard was subjected to a pervasive and continuous pattern of unwelcome conduct from October 2, 2024, until her termination in February 2025. This conduct included but was not limited to: Threats and warnings to "watch her back" and "look for other jobs" from multiple employees; Systematic, unwarranted policy accusations and scrutiny; Intimidating physical conduct; Demeaning and unprofessional comments, such as hoping Ms. Howard's successful collection checks "don't bounce."

98. The unwelcome conduct was based on Ms. Howard's race and color (Black/African American).

99. Ms. Howard was subjected to punitive and retaliatory requirements that were not imposed upon similarly situated white employees following the same incident.

100. The disparate application of disciplinary scrutiny and the denial of career advancement/compensation were motivated by discriminatory animus following Ms. Howard's engagement in protected activity.

101. The harassment was sufficiently pervasive and severe enough to alter the conditions of Ms. Howard's employment and create an abusive working environment.

102. The conduct was constant, widespread, and involved multiple managers and partners, demonstrating a firm-wide failure to control the abuse.

103. The cumulative effect of the hostility caused Ms. Howard to suffer from severe daily panic attacks, increased anxiety, depression, and isolation, often necessitating that she physically leave work or work remotely.

104. The hostile work environment is directly imputable to the Defendants because the harassment was primarily perpetrated by the firm's partners and managers, including Defendants, who are acting agents of the Firm and whose actions constitute official acts of the employer.

105. As a direct and proximate result of this hostile work environment, Ms. Howard suffered severe economic and emotional damages, justifying the relief requested herein.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Mark Groves)

106. Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

107. Plaintiff had a valid contractual relationship or business expectancy with Glasser and Glasser and was employed as an attorney at the firm.

108. Defendant Mark Groves, as a managing attorney at Glasser and Glasser, had direct knowledge of Ms. Howard's employment contract.

109. Defendant Groves intentionally interfered with Ms. Howard's contractual relationships and expectancies by undermining her professional standing, making disparaging comments towards her, and about her clients.

110. Defendant Groves made Ms. Howard sign the "voluntary resignation/termination agreement" on February 3, 2025, which preceded the retaliatory termination by the Firm four days later, demonstrating his active participation in the termination process

111.     Defendant Groves employed improper methods by: Participating in the retaliatory campaign by undermining Ms. Howard's professional standing; forcing Ms. Howard to sign a resignation letter.

112.     As a direct result of Defendant Groves' intentional and malicious interference, Ms. Howard suffered resultant damages, including the loss of her employment and income, the loss of her promised promotion, and severe emotional distress damages.

**SEVENTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY**
**(Against Mark Groves)**

113.     Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

114.     Plaintiff had a valid business expectancy in the promised promotion to senior associate/director of employee relations, which Mr. Groves himself promised on or about August 8, 2024.

115.     Defendant Mark Groves, as a managing attorney at Glasser and Glasser, had direct knowledge of Ms. Howard's business expectancy regarding the promotion.

116.     Defendant Groves intentionally interfered with Ms. Howard's expectations by undermining her professional standing, making disparaging comments towards her, and about her clients.

117.     Defendant Groves intentionally interfered with Ms. Howard's business expectations by giving reputational and compensatory credit as well as professional advancement opportunities to another (non-black) employee for all of the work that Ms. Howard had specifically and successfully completed tasks that resulted in the department making or exceeding internal benchmark goals between April 15, 2024, to September 30, 2024.

118. Defendant Groves employed improper methods by: Participating in the retaliatory campaign by undermining Ms. Howard's professional standing; forcing Ms. Howard to sign a resignation letter.

119. As a direct result of Defendant Groves' intentional and malicious interference, Ms. Howard suffered resultant damages, including the loss of her employment and income, the loss of her promised promotion, and severe emotional distress damages.

## EIGHTH CAUSE OF ACTION
## DISCRIMINATION IN VIRGINIA HUMAN RIGHTS ACT
## VA. CODE ANN. §§ 2.2-3905
### (Against All Defendants)

120. Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

121. By the actions described above, Defendants discriminated against Plaintiff on the basis of her race and color in violation of the Virginia Human Rights Act by subjecting Plaintiff to a hostile work environment, terminating Plaintiff's employment, and failing to promote Plaintiff.

122. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Human Rights Act, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

123. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Human Rights Act, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief, in addition to costs and reasonable attorneys' fees pursuant to Va. Code Ann. § 2.2-3908.

## NINTH CAUSE OF ACTION
## BREACH OF CONFIDENTIALITY AND DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT (ADA).
### (Against Glasser and Glasser)

124. Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

125. Pursuant to 42 U.S.C. § 12112(d), information obtained regarding an applicant or employee's medical condition or history must be treated as a confidential medical record.

126. Specifically, under § 12112(d)(4)(C), any medical information collected by an employer must be maintained in separate medical files and treated as confidential.

127. The prescription medications that Ms. Howard takes are protected medical information and should never have been disclosed to third parties or other employees within the firm.

128. The disclosure of this information, including during the October 1, 2024, Discover Bank audit, constitutes a clear violation of Ms. Howard's rights under the ADA.

129. Plaintiff suffered damages as a result of Defendants' unlawful actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

130. Defendants intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference and, as a result, are liable for punitive damages.

### TENTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE
### (Against Glasser and Glasser)

131. Plaintiff repeats and realleges the preceding paragraphs, as if fully set forth herein.

132. Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. *Green v. Town of E. Haven*, 952 F.3d 394, 404 (2d Cir. 2020); *Huizenga v. Am. Int'l Auto. Dealers Ass'n,* No. 1:05cv264(JCC), 2005 U.S. Dist. LEXIS 30972, at *10 (E.D. Va. Nov. 22, 2005).

133. Following the unlawful disclosure of Ms. Howard's confidential medical information during the October 1, 2024, Discover Bank audit, Defendants engaged in a deliberate and sustained campaign of retaliation and intimidation against Ms. Howard.

134. Plaintiff was subjected to email surveillance, had her messages blocked or deleted, was forced to attend unwarranted IT disciplinary sessions, and was required to sign a document falsely indicating policy violations.

135. Plaintiff was accused of minor infractions and placed under unusual scrutiny not experienced by similarly situated (non-black) employees. Plaintiff's access to firm systems, including her email, phone, and garage, was restricted. Key colleagues warned her that firm leadership was "trying to find a reason to fire her" or "make it unbearable so she would quit."

136. The hostile treatment was not only severe but persistent. Plaintiff suffered daily panic attacks, which were witnessed by multiple coworkers and documented through increased medical and therapeutic intervention.

137. Ultimately, at the direction of Mark Goves, Plaintiff signed a separation agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

D. Award to Plaintiff compensatory damages;

E. Award to Plaintiff punitive damages; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Respectfully Submitted,

/s/ Lucrecia P. Johnson
Lucrecia P. Johnson, Esq.
Va Bar No. 96310
LPJ Legal, PLLC
853 New Jersey Ave SE, Suite 200
Washington, DC 20003
202-643-6211
lucrecia@lpjlegal.com
Attorney for Plaintiff